No. 2027, December 7, 1917.)

# JANES v. WEST PUERTO DE LUNA COMMUNITY DITCH.

### SYLLABUS BY THE COURT.

Sections 5739 and 5743, inclusive, Code 1915, providing for condemnation of right of way over lands of another for acequia purposes, are unconstitutional in that they make no provision for notice to the owner of the meeting of the appraisers for the purpose of fixing the damages, nor opportunity to be heard thereon.

Appeal from District Court, Guadalupe County; Leahy, Judge.

Suit for injunction by Jarett O. Janes against the West Puerto de Luna Community Ditch. Demurrer to complaint overruled, decree for plaintiff, and defendant appeals. Affirmed.

F. Faircloth of Santa Rosa, for appellant. E. R. Wright, of Santa Fe, and C. E. McGinnis, of Santa Rosa, for appellee.

### OPINION OF THE COURT.

HANNA, C. J.—This is an appeal by the West Puerto de Luna Community Ditch, a corporation, from a decree rendered by the district court of Guadalupe county.

The suit was for an injunction. The complainant, in substance and effect, alleged that Jarrett O. Janes, the appellee, was the owner of the "Agua Negra Grant" upon which arose certain springs which were the sole source of water supply to the "Rito Agua Negra" creek; that said creek runs in an easterly direction across the said grant; that appellant, without right and authority and without the consent of appellee, is engaged in digging a ditch and constructing a dam and spillway on the lands of appellee, for the purpose of conducting the water of said creek for its own

purpose and diverting same from the natural channel of said creeek; that the appellee will be irreparably damaged should such action be permitted on the part of appellant, in that appellee will be deprived of the use and benefit of said waters, his land to some extent rendered useless and of no value, and rights obtained to said waters by appellant to which it is not entitled. It was also alleged that appellant would be required to trespass upon the lands of appellee in the construction and maintenance of said ditch, dam, and spillway, and that consequently the land would be damaged and the grass destroyed. The appellee prayed that appellant and its officers, etc., be enjoined and restrained from entering or trespassing upon said lands for the purpose of constructing, building, or in any manner maintaining said ditch, dam, and spillway and prohibited from conducting the waters of said creek through said ditch. The complaint also prayed for the issuance of a mandatory injunction commanding the appellant to forthwith restore said waters of said creek to the natural channel thereof.

A demurrer to the complaint, filed by appellant, was overruled by the trial court. The demurrer proceeded upon the theory: (1) That the water users under said community ditch should be made parties; (2) that appellee's remedy was by way of quo warranto and not by a suit in equity; (3) that the complaint discloses no right in appellee to the use of said waters; and (4) that the facts stated in the complaint disclose that appellant was doing only that which it was entitled to do. The trial court overruled this demurrer, and appellant answered to the complaint. After denying certain portions of the complaint, the answer set up facts tending to show that the right to enter upon the lands of appellant and construct the said ditch, dam, and spillway, and maintain the same, was acquired by condemnation proceedings in a court of the justice of the peace, such proceedings having been had under sections 57,39 to 5743, inclusive, of the Code 1915. Appellee's demurrer to this answer raised the following questions: (1) That the court in which the alleged con-

demnation proceedings were had was without jurisdiction in the premises; (2) that said proceedings and the action taken by the court therein were coram .non judice and void because no application to use said waters had been made by appellant as required by law; and (3) that appellant was without right or authority to enter upon the lands of appellee. Appellant elected to stand upon its answer, after the court had sustained said demurrer, and judgment was rendered against it in accordance with the prayer in the complaint.

Sections 5739' to 5743, inclusive, Code 1915, enacted in Spanish in 1866, provide, in substance and effect, that whenever a public ditch, or portion thereof, shall be destroyed, and it is impossible to reconstruct it where it formerly ran, the new ditch or portion thereof may be constructed on lands of others by offering to pay the owner or owners compensation agreed upon between said owner and the parties interested in said ditch; that in the event said owner or owners should "improperly refuse or decline to accept the compensation offered by the parties interested in such ditch, or ask a compensation which the parties interested do not agree to on account of its exorbitance," the Mayordomo "shall lay the case before the justice of the peace," and it shall thereupon be the duty of the said justice of the peace to appoint three persons, "experts" as appraisers, to "establish a just compensation to be paid to the owner or owners solicited to permit their lands to be ditched." The appraisers are required to take an oath, view the land to be condemned, ascertain whether it is absolutely necessary to condemn the land viewed, and make their report to the said justice of the peace of their acts in the premises. They are required to report the name of the owner of the land sought to be condemned, the sum to be paid for the right acquired by condemnation, and the direction, place, and point where the opening of the new ditch shall be made. Their report apparently has the effect of a final judgment, the act not making any provision for a judgment or decree in such case by the justice of the peace.

The most important question in this case concerns

the constitutionality of the act. It is argued by appellee that the act is unconstitutional because it violates section 18 of article 2 of the state Constitution. That section provides that no person shall be deprived of life, liberty, or property without due process of law. The underlying objection made to the constitutionality of the sections is that they make no provision for notice to the owner of the proceedings nor an opportunity to be heard. These sections have been before the courts of the territory and state several times, but the precise question involved herein has not heretofore been considered. The question here is, not whether the appellee had notice of the proceedings and an opportunity to be heard as to the amount of damages suffered by him, a proposition to which we shall hereafter refer, but whether a statute providing for no notice is constitutional. The sections cited supra provide for no notice of the assessment of damages by the appraisers, nor is any provision made for acquiring jurisdiction by the court of the justice of the peace over the person of the owner of the land sought to be taken for ditch purposes or changed with the easement. The proceedings provided for by the statute contemplate that the report of the appraisers constitutes a judgment or decree in condemnation. It is true that the owner of the land sought to be taken for ditch purposes obtains notice that his land is desired for ditch purposes, because an attempt must be made by the parties interested, under the statute, to obtain the right from the owner by agreement and the payment of agreed compensation. This is a preliminary step required to be taken before the proceedings for condemnation are authorized. Compliance was had with this portion of the statute; but, as we have said, the statute is silent as to further notice to the owner in the condemnation proceedings. So far as the statute is concerned, the interested parties may lay the case before the justice of the peace, have appraisers appointed, appraise the land, make report to the justice of the peace, and thereupon maintain the absolute right to

the use of the land so condemned, all without any semblance of notice to the owner.

In 10 R. C. L. "Eminent Domain," § 160, it is said, among other things:

"* * * There is a direct conflict of authority on the constitutionality of a statute which authorizes the taking of property by eminent domain without specifically providing for notice. In some states it is held that, if it can be inferred from other provisions of statutes providing or assuming that the owner is to be represented at the hearing, that the Legislature expected that he was to be notified, and if notice was in fact given him, the owner is not deprived of any constitutional right; but in a few jurisdictions it is held that, unless the statute specifically requires notice to be given the land owner, it is unconstitutional and cannot be the basis of a valid taking. * * * ".

In Sterritt v. Young, 14 Wyo. 146, 82 Pac. 946, 4 L. R. A. (N. S.) 169, 116 Am. St. Rep. 994, a leading case on this subject, it was held that a statute much like the one in the case at bar was unconstitutional, in that it did not provide for notice to the landowner of the hearing for fixing the damages. In that case the statute went further than does the sections involved in the case at bar, in that there the statute provided that the county commissioners should give certain prescribed notice prior to the appointment of the appraisers. The court said:

"It is contended by counsel for plaintiff that the procedure thus provided and authorized attempts to take, and authorizes the taking of, private property without due process of law and without just compensation to the owner, and therefore violates both the letter and spirit of the Constitution, and is void. In considering the question it must be remembered that we are dealing with the question of the constitutionality of the law only, and must assume that all of its requirements are to be fully complied with, and that nothing has been or will be done that the statute does not in express terms or by necessary implication require. * * * It is insisted that, as the statute makes no provision for notice to the property owner as to the time or place of the meeting of the appraisers, he is deprived of the right to be heard upon the question of the amount of damages, and for that reason the statute contravenes sections 6 and 32 of article 1 of the Constitution. These sections of the Constitution are as follows: 'No person shall be deprived of life, liberty, or property without due process of law.' * * * That the owner of property taken from him by virtue of the right of eminent domain is entitled to notice and an opportunity to be heard upon the question of the amount of his compensation can hardly be questioned. The decisions are almost unanimous on that subject. But

the important question presented in this case is: Must the statute so provide? Upon this question there is an apparent if not real, conflict in the decisions. In many cases it has been held that notice must be given, although the statute does not in terms require it, and that a statute providing for a hearing implies that notice must be given, or the proceeding will be void."

The court, after reviewing the cases on the subject, said:

"We are of the opinion that the better reasoning is that the statute must provide for notice, and that, where none is provided it should not be implied by the court. * * * "

In Board of Education v. Alldredge, 13 Okl. 205, 73 Pac. 1104, cited in the foregoing case, it was said:

"After a careful examination of all the authorities at our command, we are clearly of the opinion that the statute must stand or fall as enacted by the Legislature; and that, where no notice is provided, a court ought not to say that notice is implied; and, as has been said by other law-writers, the question is, not what was done, but what did the statute authorize to be done?"

In Lacey v. Lemmons, 22 N. M. 54, 59, 159 Pac. 949, 951, this court held a statute unconstitutional in that it failed to provide for notice to the owner of the seizure and sale of cattle. In that case it appeared that as a matter of fact the owner had such notice, but we said:

"It is not what is done under a statute in a given case, but it is what may be done, that determines its constitutionality."

We do not mean to hold that a statute is unconstitutional if it provides for notice of the proceedings before the justice of the peace. Had the statute in question provided for any process upon the owner sufficient to give him notice that proceedings were being taken to condemn his land, thus conferring upon him the right to contest the proceedings and thereby litigate the question of damages, it could hardly be doubted but that under such circumstances the statute would be constitutional. But here the statute makes no such provision.

The fact therefore that appellee may have had notice of the proceedings in all respects has no effect in determining the question. From what has been said it is obvious that sections 5739 to 5743, inclusive, are unconstitutional; hence appellant acquired no right to enter upon the lands

of the appellee by attempted condemnation proceedings thereunder. This conclusion makes it unnecessary to consider the other questions raised by appellant. In the end its rights are dependent upon the constitutionality of the foregoing sections of our statutes, and, having acquired no right to enter upon the lands of appellee by virtue of proceedings thereunder, it was without right to continue in the construction of its work thereon, and the action of the trial court was correct.

The judgment of the trial court will therefore be affirmed, and it is so ordered.

ROBERTS, J., concurs. PARKER, J., being absent, did not participate.